NO. COA13-981

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

ELIZABETH LAIRD PELZER GREEN,
f/k/a KELISCHEK,
     Plaintiff.

v.                                    Buncombe County
                                      No. 10 CVD 1666
NICHOLAS G. KELISCHEK,
     Defendant.


Appeal by plaintiff from custody order entered 13 February 2013 by Judge Andrea F. Dray in Buncombe County District Court. Heard in the Court of Appeals 17 February 2014.


> *Wyrick Robbins Yates & Ponton LLP, by Tobias S. Hampson and K. Edward Greene, for plaintiff-appellant.*
>
> *Steven Kropelnicki, PC, by Steven Kropelnicki, for defendant-appellee.*


HUNTER, JR., Robert N., Judge.


Elizabeth Laird Pelzer Green ("Plaintiff") appeals from a custody modification order granting school year custody of her minor child, C.K., to his father, Nicholas G. Kelischek ("Defendant"), in the event Plaintiff moves outside of North Carolina or 125 miles away from Cherokee County. Plaintiff contends that the trial court erred in concluding that a substantial change in circumstances had occurred warranting

modification of the parties' existing custody plan. In the alternative, Plaintiff contends that the trial court erred in concluding that it was in the best interest of C.K. to remain in North Carolina. For the following reasons, we affirm the trial court's order.

## I.   Factual & Procedural History

Plaintiff and Defendant married on 27 April 2006, separated in May 2008, and subsequently divorced on 26 April 2010. During the marriage, Plaintiff and Defendant had one child, C.K., who was born in December 2006.

On 25 March 2010, Plaintiff and Defendant entered into a separation agreement, which was incorporated into the decree of divorce to be enforceable as the judgment and order of the trial court. Pursuant to said agreement, each parent shared joint legal custody of C.K. Plaintiff had primary physical custody of C.K. during the week and Defendant had physical custody each weekend. By all accounts, Plaintiff and Defendant have, with reasonable adjustments, followed this custody plan since their divorce. C.K., who is now seven years old, has lived with this schedule since the age of two.

The custody plan agreed to by Plaintiff and Defendant is contingent on the parties' residence. Specifically, the

separation agreement provides that "[Defendant] and [Plaintiff] agree that . . . he/she will not move more than 125 miles outside of Cherokee County, North Carolina, unless otherwise agreed upon by the parties in writing or upon Order of the Court." Accordingly, at all times since their divorce, C.K. has resided with Plaintiff in Asheville on weekdays and with Defendant in Brasstown on weekends.

On 5 November 2012, Plaintiff filed a motion to modify custody, contending that there had been a substantial change in circumstances impacting C.K. since entry of the original custody order. Defendant moved to dismiss Plaintiff's motion, claiming that the motion was facially deficient, and, in the alternative, moved the trial court to modify custody giving him primary physical custody of C.K. The matter came on for a hearing before the trial court on 14 January 2013. Evidence at the hearing tended to show the following.

Since the parties' divorce, Plaintiff has maintained a residence in Asheville, albeit at three different locations. Plaintiff has not worked since C.K.'s birth and is currently unable to support herself financially. Nevertheless, Plaintiff has been attentive to C.K.'s needs, encouraging C.K. to

participate in extracurricular activities and attending to C.K.'s medical needs.

In June 2011, Plaintiff rekindled a romantic relationship with Mr. Dominic Green ("Mr. Green"), a man she dated in high school. Mr. Green currently lives in Portland, Oregon. On 25 May 2012, Plaintiff married Mr. Green. Plaintiff has not relocated to Oregon but desires to do so.[1]

Since resuming a relationship with Mr. Green, Plaintiff has traveled to Oregon several times, including trips with C.K. Mr. Green has two children from a previous marriage of which he does not have primary custody. Mr. Green lives in a small condo, but has indicated he will buy a house and provide for Plaintiff and C.K. if they move to Oregon. Neither Mr. Green nor Plaintiff have extended family in Oregon. C.K.'s maternal grandmother and great-grandmother are in North Carolina.

Since the parties' divorce, Defendant has lived near C.K.'s paternal grandparents in Brasstown and has worked in the family's instrument manufacturing and distribution business. Defendant's housing situation is stable and C.K. has his own room when staying with Defendant. Defendant has consistently

---

[1] Plaintiff's motion to modify custody asked the trial court to "award the Plaintiff the primary care and control of the child and [to enter an order concluding] that Plaintiff be allowed to relocate with the minor child to the State of Oregon."

exercised his weekend custody of C.K. and has also been attentive to C.K.'s developmental needs. Defendant's extended family is actively involved in C.K.'s life. Defendant is currently engaged to Ms. Misty Taylor ("Ms. Taylor"), whom he has known for three years. Ms. Taylor has met C.K. and has a warm relationship with him.

C.K. is a well-adjusted, healthy, and happy child. C.K. participates actively in extracurricular activities in both Asheville and Brasstown. C.K. is aware that Plaintiff wishes to relocate them to Oregon and is aware that the proposed relocation has placed tension between Plaintiff and Defendant. C.K. exhibited separation anxiety on one occasion when leaving Defendant to return with Plaintiff to Asheville.

C.K. is now old enough to attend school. Anticipating that C.K.'s education would necessitate changes to the custody plan, the parties' separation agreement included the following:

> When [C.K.] begins school, [Defendant] and [Plaintiff] agree to negotiate any necessary revisions to the visitation schedule. The parenting schedule will be reviewed each and every year in the month of June and tailored to meet the needs of both parents and [C.K.'s] development.

Notwithstanding this provision, there has been conflict between the parties as to whether C.K. should attend public school or be home-schooled by Plaintiff.

Upon hearing the foregoing and other record evidence, the trial court concluded that there had been a substantial change in circumstances since the entry of the divorce decree warranting modification of the original custody order. Accordingly, by order dated 13 February 2013, the trial court denied Defendant's motion to dismiss and concluded:

> That Plaintiff shall be entitled to the school year custody of the minor child and the minor child shall attend school within the Plaintiff's school districts provided the Plaintiff/mother continues to reside within 125 miles of Cherokee County, North Carolina. That should the Plaintiff/mother reside outside of North Carolina or outside of 125 miles of Cherokee County, North Carolina, the Defendant/father shall be entitled to the school year custody of the minor child and the minor child shall attend school within the Defendant's school districts.

Plaintiff filed timely notice of appeal.[2]

---

[2] The record on appeal contains two substantively identical custody orders entered by the trial court on 13 February 2013—one entitled "Custody Order" and the other "Defendant's Proposed Order (Custody Order)." Plaintiff's notice of appeal is from both of these orders. Because there is no substantive difference between them, our disposition applies to both. Nevertheless, for ease of interpretation, all references to the trial court's custody modification order are in the singular

## II.  Jurisdiction & Standard of Review

Plaintiff's appeal lies of right to this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2013).

"When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence." *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation and quotation marks omitted).  "A trial court's unchallenged findings of fact are presumed to be supported by competent evidence and [are] binding on appeal."  *Respess v. Respess*, ___ N.C. App. ___, ___, 754 S.E.2d 691, 695 (2014) (citation and quotation marks omitted). Here, Plaintiff has not challenged the trial court's findings of fact, so we consider them binding before this Court.[3]

However, "[i]n addition to evaluating whether a trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its

---

form.
[3] Plaintiff's brief, in passing, challenges portions of Finding of Fact 17, 20, 21, and 22.  However, we consider these excerpts unessential to our holding or disposition in this case.

conclusions of law." *Shipman*, 357 N.C at 475, 586 S.E.2d at 254. "If the trial court's uncontested findings of fact support its conclusions of law, we must affirm the trial court's order." *Respess*, ___ N.C. App. at ___, 754 S.E.2d at 695 (citation and quotation marks omitted); *see also Everette v. Collins*, 176 N.C. App. 168, 171, 625 S.E.2d 796, 798 (2006) ("Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal.").

## III. Analysis

In granting a motion to modify custody, the trial court's task is twofold. First, the trial court must determine that a substantial change in circumstances affecting the minor child has taken place since entry of the existing custody order. *Shipman*, 357 N.C at 474, 586 S.E.2d at 253. Second, the trial court must determine that modification of the existing custody order is in the child's best interests. *Id.* "If the trial court concludes that modification is in the child's best interests, only then may the court order a modification of the original custody order." *Id.*

On appeal, Plaintiff challenges the trial court's conclusion that a substantial change in circumstances had occurred warranting modification of the original custody order. Alternatively, Plaintiff contends the trial court erred in

determining that it was in C.K.'s best interests to stay in North Carolina. We address each of these arguments in turn.

**A. Substantial Change in Circumstances**

With respect to the trial court's determination that a substantial change in circumstances had taken place, Plaintiff's brief makes three principal arguments: (1) that Plaintiff's proposed relocation does not constitute a substantial change in circumstances; (2) that the trial court erred by failing to make specific findings demonstrating a causal connection between the changed circumstances identified in the trial court's modification order and the welfare of C.K.; and (3) that the trial court acted under a misapprehension of law because it considered only the adverse consequences of Plaintiff's relocation for purposes of determining whether a substantial change in circumstances had taken place.

Notwithstanding Plaintiff's briefing of these issues, we hold that Plaintiff has waived these contentions by taking the opposite position in the trial court below.

Unlike the typical situation where the appellant has obtained an adverse ruling on the substantial change question in the trial court, here, Plaintiff was the movant below and specifically asked the trial court to conclude that a

substantial change in circumstances had taken place based on her remarriage and proposed relocation to Oregon. However, because the trial court's subsequent best interests determination did not go as Plaintiff anticipated, Plaintiff now seeks to assert an inconsistent legal position on appeal in order to avoid the modified custody plan set forth in the trial court's order. This she cannot do.

"It is well established that a party to a suit may not change [her] position with respect to a material matter during the course of litigation. Especially is this so where the change of front is sought to be made between the trial and the appellate courts." *Leggett v. Se. People's Coll.*, 234 N.C. 595, 597, 68 S.E.2d 263, 266 (1951) (internal citations and quotation marks omitted).

> Our Supreme Court has long held that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts. . . . According to Rule of Appellate Procedure 10(b)(1), in order to preserve a question for appellate review, the party must state the specific grounds for the ruling the party desires the court to make. The [party] may not change [her] position from that taken at trial to obtain a steadier mount on appeal.

*Balawejder v. Balawejder*, 216 N.C. App. 301, 307, 721 S.E.2d 679, 683 (2011) (internal quotation marks and citation omitted) (first alteration in original). Accordingly, because Plaintiff represented that her remarriage and proposed relocation did constitute a substantial change in circumstances before the trial court, she cannot assert the contrary for the first time on appeal.[4] Nor can she complain of a ruling she applied for and received from the trial court. *See Garlock v. Wake Cnty. Bd. of Educ.*, 211 N.C. App. 200, 212, 712 S.E.2d 158, 167–68 (2011) (stating that as to invited errors, "[o]ur Courts have long held to the principle that a party may not appeal from a judgment entered on its own motion or provisions in a judgment inserted at its own request. . . . An appellant is not in a position to object to provisions of a judgment which are in conformity with their prayer, and they are bound thereby" (internal quotation marks and citations omitted) (first alteration in original)).

---

[4] We note that our holding with respect to this point is distinguishable from our holding in *Hibshman v. Hibshman*, 212 N.C. App. 113, 710 S.E.2d 438 (2011), cited by Plaintiff. In *Hibshman*, we held that a party cannot waive the requirement that the trial court find a substantial change in circumstances because that requirement is not a right held by the litigant, rather, it is a limitation on the authority of the courts to modify custody orders in order to protect the children involved. *Id.* at 125, 710 S.E.2d at 445–46. Here, the trial court did not disregard its duty to determine whether a substantial change in circumstances had occurred, so *Hibshman* is inapposite.

However, even if Plaintiff's arguments were properly preserved for our review, we find no error in the trial court's order. By arguments (1) and (2) above, Plaintiff contends that her remarriage and proposed relocation with C.K. is not, in and of itself, a substantial change in circumstances and that the trial court failed to connect the specific changes upon which it relied with evidence concerning how such changes affect C.K.'s welfare.

We have previously held that

> remarriage, in and of itself, is not a sufficient change of circumstance affecting the welfare of the child to justify modification of the child custody order without a finding of fact indicating the effect of the remarriage on the child. Similarly, a change in the custodial parent's residence is not itself a substantial change in circumstances affecting the welfare of the child which justifies a modification of a custody decree.

*Evans v. Evans*, 138 N.C. App. 135, 140, 530 S.E.2d 576, 579 (2000) (internal citations omitted). Accordingly, in situations where the substantial change involves a discrete set of circumstances, *e.g.*, a parent's relocation, remarriage, etc., "the effects of the change on the welfare of the child are not self-evident and therefore necessitate a showing of evidence

*directly* linking the change to the welfare of the child."
*Shipman*, 357 N.C at 478, 586 S.E.2d at 256.

Here, the trial court did make findings regarding Plaintiff's remarriage and proposed relocation, as well as how those actions affect C.K.:

> 19. . . . Plaintiff/mother married [Mr.] Green on May 25, 2012. She has not relocated to Oregon but desires to do so. She testified that she has no intention of moving to Oregon without [C.K.].
>
> . . . .
>
> 35. That the Court finds as fact that [Plaintiff and Defendant] have behaved well and the exchanges on weekends have gone very well until the issue of relocation arose in September 2011. At that time, Defendant/father became very concerned that Plaintiff/mother would try to take [C.K.] further away. Defendant/father was already concerned about not being able to see [C.K.] except on weekends.
>
> 36. That the Court finds as fact that when Plaintiff/mother married, the parties determined that mediation was necessary, and Defendant/father initiated scheduling a meeting. . . . Defendant/father believed that it would not be productive to try to resolve the issue without a mediator present.
>
> 37. That the Court finds as fact based on the evidence before it that the Plaintiff/mother complained that Defendant/father failed to communicate with her. The Court finds that the Defendant/father often did not respond to Plaintiff/mother because he did not find it

productive to try to negotiate with her without a mediator. He allowed her to make plans for [C.K.] during her time and did not object to activities she had planned for [C.K.]. He trusted her judgment until the relocation issue arose. He then felt disrespected as a result of her decision to try to take [C.K.] so far away from him.

38. The Court finds as fact that as a result of the relocation issue, conflict began to build and [C.K.] became aware of the change in dynamics between Plaintiff/mother and Defendant/father. The minor child is aware that the Plaintiff/mother wanted to move to Oregon. In the past the parents had always stopped at a candy store in Dillsboro, NC, the half way point between them. It was typical for them to spend a half hour talking with [C.K.] about things he was doing and exchanging information about [C.K.'s] life with the other parent. The exchanges became shorter and on one occasion, for the first time, [C.K.] exhibited separation anxiety not wanting to leave his Defendant/father at the end of his time with Defendant/father.

39. That the Court finds as fact based on the evidence presented that the Plaintiff/mother's decisions to marry and move to Portland, Oregon were made not for the benefit of [C.K.], but for the benefit of the Plaintiff/mother. That the Court finds no credible evidence before it that Oregon offers a superior environment, either culturally, educationally or in any other way, to the minor child's home State of North Carolina which would make a move to Oregon advantages [sic] for the minor child.

40. The Court finds as fact based on the evidence presented that the stability of the Plaintiff/mother's plans are a concern. The

Plaintiff/mother has stated that she has no intention of leaving [C.K.] in Asheville, and would not move her residence to Oregon without [C.K.]. However, she testified that she intends to continue her relationship with her husband and he will continue to work in Oregon. Plaintiff is in a new marriage and they have not lived together for more than three consecutive weeks since the marriage in April 2012. Plaintiff has not been employed for many years and has not been successful in maintaining stable long term employment or relationships. Defendant/father has reasonable grounds for resisting the relocation.

41. The Court finds as fact based on the evidence presented that it is not reasonable for [C.K.] to have to travel four times per year in order to stay with his Defendant/father for a one month period of time. This schedule would cause the minor child to have his residence intermittently upset, to forego a normal school and social environment and make it unnecessarily difficult for him to have friends and consistent activities. The court finds that this arrangement would not foster stability for [C.K.] or be in his best interest.

These findings directly link Plaintiff's remarriage and relocation to changes in C.K.'s life, namely, the growing tension between Plaintiff and Defendant, the resulting effect of that tension on C.K., the interference with C.K.'s educational and social development, and the likelihood that C.K. would be subjected to a less stable environment in Oregon.

The trial court's order also made findings of fact regarding Defendant's engagement and the effect of that

relationship on C.K., as well as changes in C.K.'s educational needs as he reaches school age:

30. Evidence was before the court and the Court finds as credible, that the Defendant/father became recently engaged to [Ms.] Taylor, a woman he has known for about three years. . . . Ms. Taylor testified and the Court finds that she and [C.K.] have a warm relationship and that she is ready to be a stepparent to him.

. . . .

42. The Court finds, and common sense dictates, that the needs of a very young child may change significantly as that child moves from infancy to school age. Even a short period of time in the life of a young child, can require a readjustment to appropriately meet the child's developmental needs and overall best interests. The parties to this action clearly anticipated in their Agreement/Court Order that when [C.K.] started school the visitation would be renegotiated. That the terms of the agreement now Order of April 26, 2012 regarding child custody issues were specific in many regards and included terms which are relevant to the matters before the Court:

a. The stand alone paragraph entitled Residence states: "The Husband and Wife agree to that he/she will not move more than 125 miles outside of Cherokee County, North Carolina, unless otherwise agreed upon by the parties in writing or upon Order of the Court."

b. Paragraph 17. reads in part: "When [C.K.] begins school the [Defendant] and [Plaintiff] agree to negotiate any necessary revision to the visitation

schedule. The parenting schedule will be reviewed each and every year in the month of June and tailored to meet the needs of both parents and [C.K.'s] development."

These changes were also considered by the trial court in its substantial change of circumstances analysis.

Furthermore, the order explicitly acknowledged our precedent regarding remarriage and relocation, stating:

43. The Court recognizes that the requested relocation of the Plaintiff is not, in and of itself a substantial change in circumstances which warrants a modification of the custody of the minor child, absent a finding that it is likely that the relocation to Portland would have an adverse effect on [C.K.]. The Court finds as fact based on the evidence presented that because of the close relationship [C.K.] has with his Defendant/father and the extended family in North Carolina that the loss of ongoing, stable, consistent, weekly contact between the Defendant and the minor child would indeed have an adverse affect [sic] on the minor child. It is not in the best interest of the minor child's development that he be relocated to Oregon.

Based on these and other finding of facts, the trial court concluded:

4. . . . that there has been a substantial change in circumstances impacting the welfare of the minor child since the entry of the last Order of April, 26, 2010, which warrants modification of the current custody schedule of the child and that such a modification is in the best interest of the

minor child.

Accordingly, the trial court did not rely on Plaintiff's remarriage and relocation alone in invoking its authority to modify the existing custody order. Nor did the trial court abandon its responsibility to link individual changes in circumstance with C.K.'s welfare. Plaintiff's arguments on these points are therefore without merit.

By argument (3) above, Plaintiff contends that the trial court acted under a misapprehension of law because it only considered the adverse consequences of Plaintiff's remarriage and relocation and not any salutary affects appertaining thereto. Again, Plaintiff's argument is without merit.

> [C]ourts must consider and weigh all evidence of changed circumstances which affect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child. In appropriate cases, either may support a modification of custody on the ground of a change in circumstances.

*Pulliam v. Smith*, 348 N.C. 616, 619, 501 S.E.2d 898, 899 (1998). Here, although the trial court stated in Finding on Fact 43 that it could not modify custody based on Plaintiff's relocation "absent a finding that it is likely that the relocation to Portland would have an adverse effect on [C.K.]," other language

in the trial court's order indicates that it did not abandon its responsibility to consider salutary effects of Plaintiff's relocation on C.K.'s welfare. Specifically, Finding of Fact 39 states, in part:

> 39. . . . [T]he Court finds no credible evidence before it that Oregon offers a superior environment, either culturally, educationally or in any other way, to the minor child's home State of North Carolina which would make a move to Oregon advantages [sic] for the minor child.

Thus, the trial court did consider the salutary effects of Plaintiff's relocation for purposes of determining whether a substantial change in circumstances had taken place. We will not presume error based on an errant sentence found in Finding of Fact 43.

In summary, we hold that Plaintiff has waived her contention that the trial court erred in concluding that a substantial change in circumstances had taken place since entry of the original custody order. Even so, assuming *arguendo* that this question is properly before us, we would affirm the trial court's conclusion regarding changed circumstances.

## B. Best Interests of the Child

Plaintiff's second argument on appeal is that the trial court erred in determining that it was in C.K.'s best interests to remain in North Carolina.

"It is a long-standing rule that the trial court is vested with broad discretion in cases involving child custody." *Pulliam*, 348 N.C. at 624, 501 S.E.2d at 902.

> As long as there is competent evidence to support the trial court's findings, its determination as to the child's best interests cannot be upset absent a manifest abuse of discretion. Under an abuse of discretion standard, we must determine whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision.

*Stephens v. Stephens*, 213 N.C. App. 495, 503, 715 S.E.2d 168, 174 (2011) (internal quotation marks and citations omitted).

In evaluating the best interests of a child in a proposed relocation, "[t]he welfare of the child is the 'polar star' which guides the court's discretion." *Evans*, 138 N.C. App. at 141, 530 S.E.2d at 580. Factors that may be considered by the trial court include, for example:

> [T]he advantages of the relocation in terms of its capacity to improve the life of the child; the motives of the custodial parent in seeking the move; the likelihood that the custodial parent will comply with visitation orders when he or she is no longer subject

to the jurisdiction of the courts of North Carolina; the integrity of the noncustodial parent in resisting the relocation; and the likelihood that a realistic visitation schedule can be arranged which will preserve and foster the parental relationship with the noncustodial parent.

*Id.* at 142, 530 S.E.2d at 580 (quotation marks and citation omitted).

Here, the trial court made the following findings of fact pertinent to C.K.'s best interests:

26. The Court finds as fact based on the evidence presented that neither the Plaintiff/mother nor Mr. Green have any extended family in Portland Oregon. The Court finds that the minor child has extensive maternal family connections in North Carolina. [C.K.'s] maternal grandmother visits about once or twice each month and [C.K.] sees his maternal great-grand-mother about every two months. He visits with his maternal grandfather about twice each year.

27. The Court finds as fact based on the evidence presented that the Defendant/father has consistently exercised his primary physical custody of [C.K.] on weekends. The Court finds as fact based on the evidence, that the minor child and the Defendant/father have a loving and close relationship. All the evidence before the Court was that this warm relationship includes the larger immediate paternal family that lives in the area of the Defendant/father's home and residence.

28. The Court finds as fact based on the evidence presented that the community in

which the Defendant/father lives and works is a unique and enriching artistic environment. That the Defendant/father and his brothers grew up actively participating in music and in classes at the school. Defendant/father has many friends in the arts community and he actively spends time with his friends. He is involved in a dance team there. [C.K.] always participates in these activities and has now made friends there. They have no television, but do have Internet access. They have dinner with [C.K.'s] grandparents on Saturday evenings, and [C.K.] spends time with his paternal grandparents every weekend. The Defendant/father's home is a stable place that would benefit [C.K.]. Defendant/father has provided many enrichment activities for [C.K.]. [C.K.] has a rich life in the Kelischek community that would likely be diminished greatly if he were to move to Oregon.

29. The Court finds as fact based on the evidence presented that the Defendant/father has been employed in his family's business since the divorce. They make and distribute musical instruments all over the world. Several family members are employed there. Defendant/father is in charge of the Internet sales, but also works in any other capacity as may be necessary from time to time. His work schedule is Monday through Friday, although, he has for the last several years taken off early to pick up [C.K.] every Friday. Defendant/father now lives in a home close to his parents. The house has a separate suite in the basement where his nephew and wife now reside. [C.K.] now has his own separate bedroom that he sleeps in when at the Defendant's home.

. . . .

31. That the Court finds as fact based on the evidence before it that the Defendant/father has shown a real and demonstrable dedication to his extended family. . . . Though [C.K.'s] first cousins are much older than him, they interact frequently with him [and] have a warm relationship with him. These first cousins grew up in Asheville, and have been very involved in music and arts in the Brasstown community, and it appears that they have benefitted from the involvement in the Brasstown community and the culture of the extended family. [C.K.'s] aunt, a physician, lives in Asheville. The Court finds as fact based on the evidence presented that [C.K.] has benefitted from the time he spends with this extended family, and he has good relationships with them.

. . . .

39. That the Court finds as fact based on the evidence presented that the Plaintiff/mother's decisions to marry and move to Portland, Oregon were made not for the benefit of [C.K.], but for the benefit of the Plaintiff/mother. That the Court finds no credible evidence before it that Oregon offers a superior environment, either culturally, educationally or in any other way, to the minor child's home State of North Carolina which would make a move to Oregon advantages [sic] for the minor child.

40. The Court finds as fact based on the evidence presented that the stability of the Plaintiff/mother's plans are a concern. The Plaintiff/mother has stated that she has no intention of leaving [C.K.] in Asheville, and would not move her residence to Oregon without [C.K.]. However, she testified that she intends to continue her relationship

with her husband and he will continue to work in Oregon. Plaintiff is in a new marriage and they have not lived together for more than three consecutive weeks since the marriage in April 2012. Plaintiff has not been employed for many years and has not been successful in maintaining stable long term employment or relationships. Defendant/father has reasonable grounds for resisting the relocation.

41. The Court finds as fact based on the evidence presented that it is not reasonable for [C.K.] to have to travel four times per year in order to stay with his Defendant/father for a one month period of time. This schedule would cause the minor child to have his residence intermittently upset, to forego a normal school and social environment and make it unnecessarily difficult for him to have friends and consistent activities. The court finds that this arrangement would not foster stability for [C.K.] or be in his best interest.

. . . .

43. . . . The Court finds as fact based on the evidence presented that because of the close relationship [C.K.] has with his Defendant/father and the extended family in North Carolina that the loss of ongoing, stable, consistent, weekly contact between the Defendant and the minor child would indeed have an adverse affect [sic] on the minor child. It is not in the best interest of the minor child's development that he be relocated to Oregon.

Plaintiff does not challenge these findings of fact with argument on appeal. Rather, Plaintiff points to other record evidence that would tend to support relocation and emphasizes

the burden that remaining in North Carolina will place on her new marriage. While Plaintiff's interpretation of the record evidence is understandably different than the trial court, she has failed to demonstrate how the trial court abused its discretion in reaching its result, particularly in light of the above unchallenged findings of fact.

Importantly, by holding that the trial court did not abuse its discretion, we do not diminish the other findings of fact demonstrating Plaintiff's love and commitment to her son. Nor do we deny the existence of record evidence that suggests there would be benefits in allowing Plaintiff to move to Oregon with C.K. Rather, our holding recognizes the broad discretion given to the trial court in child custody matters and emphasizes our standard of review on appeal. As our Supreme Court has noted:

> The trial court has the opportunity to see the parties in person and to hear the witnesses, and its decision ought not be upset on appeal absent a clear showing of abuse of discretion. The trial court can detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges.

*Pulliam*, 348 N.C. at 625, 501 S.E.2d at 902–03 (alterations, quotation marks, and internal citations omitted). Accordingly, because Plaintiff has failed to demonstrate that the trial court's best interests determination was "manifestly unsupported

by reason" or "so arbitrary that it could not have been the result of a reasoned decision," we affirm the trial court's decision to modify the existing custody order such that Defendant is entitled to school year custody of C.K. if Plaintiff moves to Oregon.

## IV. Conclusion

For the foregoing reasons, we affirm the order of the trial court modifying custody of Plaintiff and Defendant's minor child.

AFFIRMED.

Chief Judge MARTIN and Judge ELMORE concur.