DAVIS, Judge.
Timothy Hatton ("Mr. Hatton") appeals from the trial court's 3 June 2015 order denying his motion to modify child custody and awarding attorney's fees in favor of Stephanie Garrett ("Mrs. Garrett"). After careful review, we affirm in part and vacate in part.
Factual and Procedural Background
Mr. Hatton and Mrs. Garrett were married in 2000, and two children were born of the marriage-the first child in 2003 and the second child in 2006. The couple separated in 2008, and on 27 February 2009, they entered into a consent order (the "Custody Order") regarding child custody and child support.
The Custody Order awarded them joint legal custody and gave primary physical custody of the children to Mrs. Garrett. Pursuant to the Custody Order, Mr. Hatton was entitled to visit the children "as the parties may agree" but if they were unable to agree, Mr. Hatton was granted visitation with the children, at a minimum, on "[a]lternate weekends from Friday at 5:00 p.m. to Sunday at 5:00 p.m." and "[t]wo week nights every week for dinner...." The parties agreed they would each have two weeks of "consecutive visitation" over the summer. The Custody Order further provided that they would share holiday visitation but that if they were unable to agree, they would attend mediation. Mrs. Garrett was permitted to take the children to church on Sundays even when they were staying with Mr. Hatton unless Mr. Hatton and the children were out of town for the weekend.
Around the time the Custody Order was entered, the couple informally agreed that the children would also spend every Wednesday night with Mr. Hatton. However, in October 2011, Mrs. Garrett decided-over Mr. Hatton's objections-that she did not wish to continue the Wednesday night visitations any longer. At that point, the Wednesday night visitations ceased.
In July 2009, Mrs. Garrett remarried, and she and her new husband moved into a house directly across the street from Mr. Hatton. In February 2010, Mr. Hatton also remarried, and his new wife, Margaret Hatton ("Margaret"), moved into his house.
On 5 May 2014, Mr. Hatton filed a motion to modify the Custody Order, alleging that a substantial change in circumstances had occurred. His motion requested that the trial court (1) enter a permanent order awarding joint physical and legal custody to the parties and providing that each parent would spend 50% of the time with the children; (2) specify holiday schedules; (3) hold Mrs. Garrett in contempt for failing to abide by the Custody Order; and (4) order Mrs. Garrett to pay his attorney's fees.
On 17 December 2014, a hearing on Mr. Hatton's motion was held before the Honorable Gary L. Henderson in Mecklenburg County District Court. Mr. Hatton, Margaret, and Mrs. Garrett testified at the hearing. At the conclusion of Mr. Hatton's evidence, the trial court granted Mrs. Garrett's motion for a directed verdict.[2] On 3 June 2015, the trial court issued a written order denying Mr. Hatton's motion to modify the Custody Order and awarding Mrs. Garrett attorney's fees in the amount of $10,000. On 30 June 2015, Mr. Hatton filed a timely notice of appeal.
Analysis
I. Motion to Modify Custody Order
"When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence." Shipman v. Shipman , 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003). If so, we "must determine if the trial court's factual findings support its conclusions of law." Id. at 475, 586 S.E.2d at 254 (citation omitted).[3]
"Our trial courts are vested with broad discretion in child custody matters." Id. at 474, 586 S.E.2d at 253 (citation omitted). "Accordingly, should we conclude that there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence might sustain findings to the contrary." Id. at 475, 586 S.E.2d at 253-54 (citation and quotation marks omitted).
In granting a motion to modify custody, the trial court's
task is two-fold. First, the trial court must determine that a substantial change in circumstances affecting the minor child has taken place since entry of the existing custody order. Second, the trial court must determine that modification of the existing custody order is in the child's best interests.
Green v. Kelischek , 234 N.C. App. 1, 6, 759 S.E.2d 106, 110 (2014) (internal citations omitted). Once it is shown that a substantial change in circumstances has occurred, the trial court must then consider whether modifying the order is in the child's best interests. Shipman , 357 N.C. at 481, 586 S.E.2d at 257 (citation omitted).
Mr. Hatton contends that the trial court erred in granting Mrs. Garrett's motion for involuntary dismissal because, he argues, he introduced evidence of three events that constituted a substantial change in circumstances: (1) his remarriage; (2) the cessation of the Wednesday overnight visits; and (3) the change in his work schedule. We address each in turn.
A. Remarriage
Mr. Hatton argues that the effects on his children of his marriage to Margaret were not properly considered because (1) the trial court erroneously shortened the relevant time period for conducting a changed circumstances analysis; and (2) if the trial court had properly considered his remarriage, it would have determined that his remarriage constituted a substantial change in circumstances.
Mr. Hatton points to the following finding of fact made by the trial court in support of his argument that the court improperly shortened the relevant time period in its analysis:
49. The two circumstances that could arguably be characterized as substantial changes are the remarriages of the respective parties. However, [Mrs. Garrett's] remarriage occurred more than five years ago, and [Mr. Hatton's] remarriage occurred more than four years ago.
(Emphasis added.)
In reviewing a motion to modify an existing custody order, a trial court must consider all evidence of changed circumstances that has occurred since the entry of the preexisting custody order-regardless of how remote in time they may be. See, e.g. , Green , 234 N.C. App at 6, 759 S.E.2d at 110 ("[T]he trial court must determine that a substantial change in circumstances affecting the minor child has taken place since entry of the existing custody order ." (emphasis added)); Pulliam v. Smith , 348 N.C. 616, 619, 501 S.E.2d 898, 899 (1998) (holding that the court "must consider and weigh all evidence of changed circumstances which affect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child." (emphasis added)).
While the language in Finding No. 49 notes the fact that Mr. Hatton's remarriage occurred a number of years before the date of the hearing, the trial court also made the following findings of fact:
9. Plaintiff testified that his marriage has positively affected the children, but did not provide any examples or other evidence of how his marriage has affected the children.
....
50. By his own testimony and conduct, [Mr. Hatton] did not consider ... these circumstances to be substantial, nor to have substantially affected the [p]arties' children.
Therefore, it is clear that the trial court actually considered the evidence regarding Mr. Hatton's remarriage. Moreover, we believe that Finding Nos. 9 and 50 are, in fact, supported by the evidence and that there was an insufficient showing by Mr. Hatton as to any specific effects of his remarriage on the children that would rise to the level of a substantial change in circumstances.[4]
B. Cessation of Wednesday Overnight Visits
Mr. Hatton similarly argues that the trial court improperly shortened the applicable time period for making a determination of changed circumstances regarding the Wednesday overnight visits. The trial court made the following findings of fact on this subject:
40. Almost immediately after the entry of the current Custody Order, the parties changed the schedule to accommodate [Mrs. Garrett's] desire to go to school. As a result of the parties' agreement to change the schedule, [Mr. Hatton] ha[d] one additional overnight with the children each week.
41. After [Mrs. Garrett's] school schedule changed, she sought to return to the terms of the current Custody Order, but [Mr. Hatton] refused.
42. In 2011, the parties resumed the schedule set forth in the current Custody Order. [Mr. Hatton] believes that the return to the terms of the Custody order and the resulting loss of this extra overnight with the children was related to litigation between the parties regarding the terms of their Separation and Property Settlement Agreement.
43. [Mr. Hatton] testified that the children were devastated about the loss of [the Wednesday] overnight [visits] with their father. However, the Court finds that this incident occurred more than three years prior to the trial, and therefore, has no bearing on [Mr. Hatton's] motion to modify child custody which was not filed until May 2014 .
(Emphasis added.)
We acknowledge that the language employed by the trial court in Finding No. 43-when read in isolation-incorrectly suggested that the cessation of the Wednesday overnight visits had no relevance to Mr. Hatton's motion to modify custody simply because it occurred more than three years before the hearing. Such a proposition would be incorrect as a matter of law because-as discussed above-any change in circumstances occurring since the entry of the last custody order must be considered by the trial court in evaluating such a motion. See Pulliam , 348 N.C. at 619, 501 S.E.2d at 899. However, upon reading Finding No. 43 contextually with the remainder of the trial court's findings, we are satisfied that the trial court did, in fact, take into account the cessation of the Wednesday overnight visits and determined that any effect on the children was insubstantial and did not have any lasting effect. Findings 48, 51, and 52 stated as follows:
48. Taking all of the testimony and evidence in the light most favorable to [Mr. Hatton], [Mr. Hatton] has failed to show that there has been a substantial change of circumstances since the entry of the February 2009 Consent Order for Child Custody and Child Support.
....
51. The remaining evidence considered in the light most favorable to [Mr. Hatton] amounts to a series of minor disagreements between the parties over the course of more than five years.
52. None of these disagreements constitutes a substantial change of circumstances and [Mr. Hatton] did not meet his burden of proof to show that any of these disagreements has had any [e]ffect on the parties' minor children.
Mr. Hatton's testimony at trial supports the trial court's findings. When asked whether the children were impacted by the termination of these visits, he testified that when the Wednesday overnights ended "[t]hey were sad for a period of time, but it has not lasted for three years." When questioned further about whether the children's sleep patterns, eating, or academic performance were affected, Mr. Hatton was unable to articulate any notable impact that ending the Wednesday night visits had on the children. Therefore, the trial court was within its discretion in declining to find a substantial change in circumstances.
C. Change in Mr. Hatton's Work Schedule
Finally, Mr. Hatton argues that the trial court did not properly consider as a substantial change in circumstances the alteration in his work schedule and the resulting increase in the amount of time he could spend with his children. The trial court included in its findings of fact the following:
10. At the time of the current custody order, [Mr. Hatton's] job required longer work hours and more travel than at the time of the trial on [Mr. Hatton's] motion to modify custody. [Mr. Hatton] no longer travels overnight for work, he is largely in control of his own schedule and now works primarily out of his home.
....
37. Since February 2009, [Mr. Hatton] has hired additional employees and he is no longer primarily responsible for handling service calls. [Mr. Hatton] enjoys greater flexibility in his work schedule and continues to work from home.
....
39. [Mr. Hatton] presented no evidence concerning how the increased flexibility in his work scheduled [sic] has affected the minor children.
....
48. Taking all of the testimony and evidence in the light most favorable to [Mr. Hatton], [Mr. Hatton] has failed to show that there has been a substantial change of circumstances since the entry of the February 2009 Consent Order for Child Custody and Child Support.
These findings make clear that the trial court did consider the change in Mr. Hatton's work schedule. Based on Mr. Hatton's testimony, however, the trial court found that the alteration in his work schedule was not sufficient to constitute a substantial change in circumstances because he failed to offer evidence as to how the change in his work schedule actually had an impact on his children. Thus, we cannot say that the trial court erred.
Accordingly, we are satisfied that competent evidence supported the trial court's findings and that these findings supported the court's conclusion that Mr. Hatton failed to show a substantial change in circumstances. Therefore, we affirm the portion of the trial court's order denying Mr. Hatton's motion for modification of custody.[5]
II. Attorney's Fees
Mr. Hatton also argues that the trial court erred in awarding attorney's fees to Mrs. Garrett. He contends that the trial court made insufficient findings regarding her assets such that its finding that she lacked sufficient means to defray the cost of defending his motion was not based on competent evidence.
A spouse is entitled to attorney's fees if that spouse is (1) the dependent spouse, (2) entitled to the underlying relief demanded ... and (3) without sufficient means to defray the costs of litigation.... [W]hether [a] plaintiff ha[s] sufficient funds to defray the costs of litigation ... generally focus [es] on the disposable income and estate of just that spouse, although a comparison of the two spouses' estates may sometimes be appropriate.
Barrett v. Barrett , 140 N.C. App. 369, 374, 536 S.E.2d 642, 646 (2000) (internal citations omitted). "In making this determination, a trial court should generally rely on the dependent spouse's disposable income and estate." Parsons v. Parsons , 231 N.C. App. 397, 405, 752 S.E.2d 530, 536 (2013) (citation and quotation marks omitted).
In the present case, the trial court made the following findings of fact in connection with its award of attorney's fees:
64. [Mrs. Garrett] is unemployed, having been a stay at home mom for the last eleven years.
65. [Mrs. Garrett] has been enrolled in school pursuing an undergraduate degree in psychology[.] However, [Mrs. Garrett] recently had to discontinue her studies due to emergency dental surgery and costs related to that surgery.
66. [Mrs. Garrett] was gifted or has inherited at least $15,000 in the last twenty-four months.
67. [Mrs. Garrett] is an interested party, acting in good faith and she lacks sufficient means to defray the costs of defending against this motion to modify child custody....
68. [Mrs. Garrett] has incurred attorney's fees in the amount of $9,113.50 and this does not include counsel's time during the trial of this matter.
69. The fees charged by [Mrs. Garrett's] counsel are fair and reasonable and comparable to attorney's [sic] practicing domestic law in Charlotte, North Carolina with similar education, training and experience.
70. The amount of attorney's fees claimed in the fee affidavit is reasonable given the education, skill and experience of [Mrs. Garrett's] counsel.
71. [Mr. Hatton's] counsel questioned [Mrs. Garrett] about several entries on the Attorney's Fees Affidavit relating to [Mr. Hatton's] motion to modify child support.
72. After deducting these time entries, an attorney's fees award of $10,000.00 is reasonable under the circumstances of this case.
73. [Mr. Hatton] has the ability to pay the attorney's fees awarded as hereinafter set forth.
Based on these findings of fact, the trial court made the following conclusions of law:
3. [Mrs. Garrett] is entitled to an award of attorney's fees from Plaintiff and an attorney's fees award in the amount of $10,000 is reasonable under the circumstances of this case.
4. [Mr. Hatton] has the ability to pay attorney's fees as hereinafter set forth.
While the trial court made certain findings-as quoted above-regarding Mrs. Garrett's job status, inheritance, and medical expenses, the court did not make any findings as to her assets and estate. Without this information, the trial court could not have properly determined whether Mrs. Garrett had "sufficient funds to defray the cost of litigation." Barrett , 140 N.C. App. at 374, 536 S.E.2d at 646. Accordingly, we remand for additional findings on this issue. See Respess v. Respess , 232 N.C. App. 611, 636-37, 754 S.E.2d 691, 707 (2014) (remanding for additional findings because "the trial court made no findings as to [Plaintiff's] expenses or her assets and estate").
Conclusion
For the reasons stated above, we (1) affirm the portion of the trial court's 3 June 2015 order denying Mr. Hatton's motion to modify the Custody Order; and (2) vacate and remand for additional findings the portion of the order awarding attorney's fees to Mrs. Garrett.
AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
Report per Rule 30(e).
Judges ELMORE and DIETZ concur.

As both parties note in their briefs, "[d]irected verdicts are appropriate only in jury cases." Bryant v. Kelly, 279 N.C. 123, 129, 181 S.E.2d 438, 441 (1971). As such, we treat Mrs. Garrett's motion for a directed verdict as a motion for involuntary dismissal under Rule 41 of the North Carolina Rules of Civil Procedure. See id.

Similarly, "[t]he proper standard of review for a motion for an involuntary dismissal under Rule 41 is (1) whether the findings of fact by the trial court are supported by competent evidence, and (2) whether the findings of fact support the trial court's conclusions of law and its judgment.... A trial court's conclusions of law are reviewable de novo on appeal." Woodridge Homes Ltd. P'ship v. Gregory, 205 N.C. App. 365, 371-72, 697 S.E.2d 370, 375 (2010) (internal citations, quotation marks, and brackets omitted).

While Mr. Hatton argues that he gave additional testimony regarding the effects of his remarriage, based on our careful review of the transcript we do not believe that the trial court erred in concluding that his evidence on this subject did not show a substantial change in circumstances.

Mr. Hatton's brief also makes a cursory argument suggesting that the trial court may have given undue weight to the fact that the Custody Order was a consent order agreed to by the parties. However, we reject this argument as meritless.