ELMORE, Judge.
Respondent appeals from an order terminating her parental rights to her minor child, K.Q., Jr. ("Kip").[1] We affirm.
I. Background
On 5 May 2015, the Durham County Department of Social Services ("DSS") filed a petition alleging that Kip, then 19 months old, was a neglected and dependent juvenile. In the petition, DSS alleged: (1) Kip did not receive appropriate care from respondent and had dried dirt covering his face, a foul body odor, discolored and patchy skin, dirt and wax buildup in his ears, sand and dirt in his diaper, and irritated genitals; (2) respondent's home was unsafe and inappropriate for Kip due to a severely foul odor, piles of trash, and dirty clothes throughout the home; (3) Kip appeared ravenous when provided food by a social worker, having only been given a lollipop for breakfast by respondent; (4) Kip had not met any of his developmental milestones and was nonverbal, unable to walk with or without assistance, and did not babble or otherwise try to communicate. Respondent provided DSS with possible alternative caregivers for Kip, but the proposed caregivers either declined to care for Kip or were not found to be appropriate caregivers by DSS. DSS obtained non-secure custody of Kip and placed him in foster care.
On 17 June 2015, the trial court entered an order adjudicating Kip to be a neglected and dependent juvenile based on facts to which respondent stipulated. The court continued custody of Kip with DSS, sanctioned placing him in foster care, and granted respondent weekly supervised visitation. Respondent was ordered to: (1) maintain contact with DSS; (2) participate in a parenting program and demonstrate her ability to parent Kip; (3) complete a comprehensive parental competency evaluation; (4) complete a comprehensive psychological evaluation; (5) maintain her visitation plan with Kip; (6) obtain a mental health assessment and follow any recommendations; (7) secure a payee of her SSA benefits that will ensure her welfare and safety; and (8) maintain safe housing.
On 18 November 2015 and 17 March 2016, the trial court held hearings to review Kip's custody placement and to develop his permanent plan. The court entered an order from these hearings on 19 May 2016 in which it found Kip was doing well in his foster home placement and that he had made excellent progress toward the goals identified in his family service plan. The court further found that respondent continued to live with her brother and was working part-time at a local fast-food restaurant. Respondent had maintained communication with DSS, but she had difficulty remembering appointments due to her mental health issues and developmental delay. Respondent had also completed a parenting skills program and obtained a psychological evaluation. The results of the psychological evaluation indicated respondent was "in the moderately intellectually deficient range in most areas" and had an intellectual function comparable in most respects to that of the average second or third grader. The evaluation recommended that respondent obtain support services for developmentally delayed adults, have a guardian appointed to assist her in avoiding exploitation and managing her finances, and obtain intensive training in parenting that accommodates her limited comprehension abilities. The court also found that respondent had completed a parental capacity evaluation that concluded she had multiple barriers to being able to parent Kip, including: (1) her intellectual disability; (2) her limited understanding and knowledge of child development; (3) her poor parenting skills; and (4) her inadequate living skills. The report concluded that respondent's self-sufficiency was unlikely to improve in the future, even with intensive interventions. The court relieved DSS of having to make further reunification efforts, set the permanent plan for Kip as adoption with a secondary plan of guardianship, and directed DSS to file a petition to terminate respondent's parental rights.
DSS filed a petition to terminate parental rights to Kip on 13 July 2016. DSS alleged grounds existed to terminate respondent's parental rights based on neglect, failure to correct the conditions that led to Kip's removal from her home, and dependency. See N.C. Gen. Stat. § 7B-1111(a)(1), (2), (6) (2015). After a hearing on 8 December 2016, at which respondent was represented by an appointed guardian ad litem, the trial court entered an order terminating parental rights to Kip on 3 February 2017.[2] The court found all three alleged grounds existed to terminate respondent's parental rights and that termination of her parental rights was in Kip's best interests. Respondent filed timely notice of appeal from the trial court's order terminating her parental rights.
II. Discussion
A. Subject Matter Jurisdiction
Respondent first argues the trial court lacked subject matter jurisdiction to terminate her parental rights because the initial juvenile petition alleging Kip was a neglected and dependent juvenile was not properly verified. We disagree.
"A trial court's subject matter jurisdiction over all stages of a juvenile case is established when the action is initiated with the filing of a properly verified petition." In re T.R.P., 360 N.C. 588, 593, 636 S.E.2d 787, 792 (2006). Where the initial abuse, neglect, or dependency petition in a juvenile case is not properly verified, the trial court never obtains subject matter jurisdiction over the case and all of its orders are void ab initio. Id. at 588, 636 S.E.2d at 789 ; see also In re S.E.P., 184 N.C. App. 481, 486, 646 S.E.2d 617, 621 (2007). Thus, where an improperly verified petition is filed by a county department of social services, the department never obtains custody of the juvenile from a court of competent jurisdiction, and it lacks standing to file a petition or motion to terminate parental rights to that juvenile. See N.C. Gen. Stat. § 7B-1103(a)(3) (2015) ; see also In re S.E.P., 184 N.C. App. at 487-88, 646 S.E.2d at 622. Nonetheless, "where the trial court has acted in a matter, 'every presumption not inconsistent with the record will be indulged in favor of jurisdiction....' " Cheape v. Chapel Hill, 320 N.C. 549, 557, 359 S.E.2d 792, 797 (1987) (quoting Dellinger v. Clark, 234 N.C. 419, 424, 67 S.E.2d 448, 452 (1951) ). Further, appellate courts are not to "engage in speculation and assume error ... when no aberration can be fairly and affirmatively ascertained from the record." State v. Fox, 305 N.C. 280, 283, 287 S.E.2d 887, 889 (1982) (emphasis added).
Respondent contends the petition was not properly verified because the handwritten date on which the petition was verified appears to be "5/11/15," but the file-stamp on the petition indicates that it was filed on 5 May 2015. Respondent argues the difference between the dates indicates that the petition was not verified when filed and thus appears facially invalid. We disagree with respondent that the handwritten date is so clearly "5/11/15" that it renders the petition facially invalid. The first line of the "11" in the date is noticeably shorter than the second and appears to have a slight curve toward the second line. It is thus plausible that the "11" was meant to be a "4" where the upper half of the number is an open box and not a closed triangle. The fact that the "11" is a "4" is further bolstered by a similarly written date, but one that is more certainly a "4" and not an "11," appearing on the non-secure custody order signed by the same magistrate judge. Moreover, no party challenged the verification at the initial adjudication and disposition hearing, where evidence could have been received by the trial court to affirmatively establish the date on which the petition was verified.
Because we cannot fairly and affirmatively determine that the contested date of the verification of the juvenile petition is actually 11 May 2015, we resolve the ambiguity in favor of the presumption of regularity. Accordingly, respondent has not shown that the trial court lacked jurisdiction to enter the initial adjudication and disposition order in the underlying juvenile case. DSS was thus properly granted legal custody of Kip and had standing to file the petition to terminate respondent's parental rights.
B. Juvenile Neglect
Respondent next argues the trial court erred in concluding the ground of neglect exists to terminate her parental rights. This Court reviews a trial court's findings and conclusions regarding a ground for termination of parental rights to determine whether clear and convincing evidence exists to support the findings of fact, and whether the findings of fact support the conclusions of law. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001). A trial court may terminate a mother's parental rights to her child when she has neglected the juvenile. N.C. Gen. Stat. § 7B-1111(a)(1) (2015). A neglected juvenile is defined in part as "[a] juvenile who does not receive proper care, supervision, or discipline ... or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2015). Generally, "[i]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child 'at the time of the termination proceeding.' " In re L.O.K., 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (quoting In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) ). However, "[w]here, as here, a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect." In re Shermer, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003) (citations omitted). A trial court may only terminate parental rights based upon prior neglect of the juvenile if the court also "finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to [his] parents." In re Reyes, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000).
Respondent contends the trial court acted under a misapprehension of the law in finding the ground of neglect, as shown by the court's statement at the hearing that the prior adjudication of neglect was sufficient to establish this ground. Respondent concedes that "as a general proposition, the written and entered order or judgment controls over an oral rendition of that order or judgment." In re O.D.S., --- N.C. App. ----, ----, 786 S.E.2d 410, 417, disc. review denied, --- N.C. ----, 792 S.E.2d 504 (2016). Respondent further concedes that in the written order terminating her parental rights, the trial court concluded that a "repetition of neglect is highly likely to occur if [Kip] is returned to [respondent's] care," and that the court's conclusions on the ground of neglect are supported by findings of fact made in the order.[3] Respondent argues, however, that the trial court's conclusion is based on a misapprehension of the law stated at the hearing and constitutes a circumstance in which the deviation from the judgment rendered in open court amounts to reversible error. See id. at ----, 786 S.E.2d at 416. We disagree.
At the hearing, the trial court held that the "[c]ourt is satisfied that [DSS] has established by clear and certainly convincing evidence under 7B-1111(a)(1) that the child certainly has been adjudicated neglected. And that alone would establish grounds for termination of parental rights." This statement is incorrect as to the evidence necessary to support the court's conclusion that the ground of neglect exists to terminate respondent's parental rights. See In re Reyes, 136 N.C. App. at 815, 526 S.E.2d at 501. Nevertheless, the court's holding at the hearing was that, ultimately, DSS had shown that grounds exist to terminate respondent's parental rights based on her prior neglect of Kip. That holding does not conflict with the holding in the trial court's written order. The court's order contains the same ultimate conclusion, but corrects the misstatement made at the hearing and concludes that respondent had previously neglected Kip and that there is a probability of repetition of that neglect should Kip be returned to her custody. We hold that the trial court's single misstatement at the hearing is insufficient to overturn the conclusions of law and supporting findings of fact in the court's written order. See Green v. Kelischek, 234 N.C. App. 1, 12, 759 S.E.2d 106, 114 (2014) ("We will not presume error based on an [isolated] errant sentence....").
Respondent does not otherwise challenge the trial court's conclusion that the ground of neglect exists to terminate her parental rights. Accordingly, we conclude that the court did not err in terminating respondent's parental rights to Kip on this ground and do not address her arguments regarding the other grounds found by the trial court. See In re N.T.U., 284 N.C. App. 722, 733, 760 S.E.2d 49, 57 ("In termination of parental rights proceedings, the trial court's finding of any one of the ... enumerated grounds is sufficient to support a termination."), disc. review denied, --- N.C. ----, 763 S.E.2d 517 (2014).
C. Best Interest of Juvenile
Respondent also argues that it was not in Kip's best interest to terminate her parental rights, because Kip's aunt and uncle had demonstrated their willingness to be Kip's guardians, and guardianship would allow Kip to maintain his relationships with his family. In support of this argument, respondent cites to In re T.H., 232 N.C. App. 16, 29, 753 S.E.2d 207, 216 (2014), wherein this Court "recognized that our statutes give a preference, where appropriate, to relative placements over non-relative, out-of-home placements." The holding in T.H., however, is inapposite, because that case dealt with the placement of a child removed from a parent's home during a juvenile abuse, neglect, or dependency proceeding, as provided for by N.C. Gen. Stat. § 7B-906,[4] and did not involve a best interest determination in a termination of parental rights case.
"After an adjudication that one or more grounds for terminating a parent's rights exist, the [trial] court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2015). When determining whether it is in a juvenile's best interests to terminate parental rights, the trial court must consider the factors set forth in N.C. Gen. Stat. § 7B-1110, which include the juvenile's age, the juvenile's likelihood of adoption, whether termination will accomplish the juvenile's permanent plan, the bond between the juvenile and the parent, the quality of any relationship between the juvenile and any potential adoptive parent, and any other relevant consideration. N.C. Gen. Stat. § 7B-1110(a)(1)-(6) (2015). "The decision to terminate parental rights is vested within the sound discretion of the trial [court] and will not be overturned on appeal absent a showing that the [court's] actions were manifestly unsupported by reason." In re J.A.A. & S.A.A., 175 N.C. App. 66, 75, 623 S.E.2d 45, 51 (2005).
Here, the trial court made findings of fact on each of the factors set forth in N.C. Gen. Stat. § 7B-1110, including:
1. [Kip] is 3 years old.
2. [Kip's] likelihood of adoption is very high. The foster parents are interested in adopting [Kip]. [Kip's aunt and uncle] are also interested in adopting [him].
3. [Kip] was placed in a traditional foster home on May 4, 2015. The child is currently in the same placement and continues to do well.... [Kip] has caught up and has reached all milestones such as walking, talking, and appropriate social interactions.... Since [Kip's] enrollment he has made excellent progress on his outcomes on the Individualized Family Service Plan (IFSP). [Kip] has achieved a number of the outcomes the team implemented when enrolling him in the Infant Toddler program including, walking down the stairs and to the car, participating in back and forth play, verbal imitation at home, and learning to feed himself.
4. ... [Kip's] foster parents sought additional services in order to continue supporting [his] development.
....
7. [Kip] benefits from the twin boys that are also in the foster home.
8. [Kip's] foster parents continue to ask for activities or suggestions for where he currently is in his development as well and undertaking the next step of his development. This allows them to know what to expect and when to advocate for him if they feel that he is showing delays in any area of his development. There is a strong bond between the foster parents and the child.
....
10. The bond between [Kip] and [respondent] has been weakened by the length of time that [Kip] has been in foster care.
11. [Kip's] bond with [respondent] is outweighed by the length of time that [he] has been in foster care without sufficient progress by [respondent] and by [his] need for permanence.
Based upon these findings of fact, and several others found within the order, we hold the trial court thoroughly considered the required statutory factors and clearly weighed Kip's need for permanence against other alternatives such as guardianship with a relative. We cannot say the court's best interest determination is manifestly unsupported by reason, and we hold the trial court did not abuse its discretion in concluding that terminating respondent's parental rights is in Kip's best interest. Accordingly, we overrule this argument and affirm the trial court's order terminating respondent's parental right to Kip.
AFFIRMED.
Report per Rule 30(e).
Judges BERGER and ARROWOOD concur.

The pseudonym "Kip" is used throughout for ease of reading and to protect the juvenile's identity.

The order terminated the parental rights of both respondent and the unknown father of Kip, who is not a party to this appeal.

Respondent does not challenge the trial court's findings of fact in support of its conclusion that the ground of neglect exists to terminate her parental rights, and these findings are binding on appeal. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

N.C. Gen. Stat. § 7B-906 was repealed by Session Laws 2013-129, s. 25, effective October 1, 2013, and replaced with N.C. Gen. Stat. § 7B-906.1.